UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Alex Jeanty

    v.                                              Civil No. 20-cv-163-JD
                                                Opinion No. 2021 DNH 061
Deutsche Bank Nat. Trust Co.,
et al.

O R D E R

Alex Jeanty brings this breach of contract action against Deutsche Bank National Trust Co. and Select Portfolio Loan Services, LLC ("SPS" or "Select Portfolio").[1]  He alleges that Deutsche Bank and Select Portfolio breached his mortgage contract and a modification to that contract.  The defendants move for summary judgment, arguing that Jeanty's remaining claims are time barred and that there is an absence of evidence supporting Jeanty's claims.  Jeanty filed an objection.

Standard of Review

"Summary judgment is appropriate when the moving party shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Joseph v. Lincare, Inc., 989 F.3d 147, 2021 WL 791615, at *6

---

[1] The court previously dismissed Counts I and II and parts of Counts III and IV of Jeanty's complaint, as well as Bank of America, N.A., as a party defendant.

(1st Cir. Mar. 2, 2021) (quoting Fed. R. Civ. P. 56(a)).  In making that determination, the court construes the record in the light most favorable to the nonmoving party.  Thompson v. Gold Medal Bakery, Inc., 989 F.3d 135, 2021 WL 791610, at *5 (1st Cir. Mar. 2, 2021).  To avoid summary judgment, the nonmoving party "must adduce specific facts showing that a trier of fact could reasonably find in his favor" and "cannot rely on conclusory allegations, improbable inferences, acrimonious invective, or rank speculation."  Id.

## Background

A.  Statement of Material Facts

Under the District of New Hampshire's Local Rules, "[a] memorandum in support of a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried." LR 56.1(a).  Similarly, memoranda in opposition to a motion for summary judgment must "incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require a trial."  LR 56.1(b).  "All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse

party."  Id.; see also Fed. R. Civ. P. 56(e)(2) (permitting the court to consider undisputed any asserted fact if the opposing party fails to properly address it); Doyon v. Porter, No. 18-cv-1128-JD, 2019 WL 5966256, at *1-*2 (D.N.H. Nov. 13, 2019) (adopting moving party's statement of material facts when nonmoving party accepted the statement of facts and objected only to legal arguments).

The defendants moved for summary judgment and provided a statement of material facts including appropriate record citations.  See doc. 19-1 at 3-8.  Jeanty's three-page objection contains no statement of material facts, and he does not assert that a genuine dispute exists as to any of the facts outlined in the defendants' statement of material facts.[2]  Because the defendants' statement of material facts is properly supported and was not opposed, it is admitted as follows:

> Plaintiff alleges he granted a first mortgage to Digital Federal Credit Union.  Complaint, ¶ 8.[3]  Plaintiff then refinanced the first mortgage.  Id. ¶ 9.  On or about March 3, 2004, Plaintiff executed a promissory note in the amount of $345,600.00 in favor of Argent Mortgage Co., LLC ("Argent").  See Counsel Affidavit (hereinafter "Counsel Aff."), Ex. 1.[4]  To

---

[2] Jeanty, who is represented by counsel, attached a "counter-affidavit" to his objection to the motion for summary judgment, but other than a single reference to it in his objection, he failed to direct the court toward any fact in the defendants' statement of material facts that he disputes.

[3] Doc. no. 1-1.

[4] Doc. no. 19-5.

secure the repayment of the note, Plaintiff granted a mortgage to Argent on the subject property. See Counsel Aff., Ex. 2.  On September 11, 2007, Argent assigned the mortgage to Deutsche Bank.  See Counsel Aff., Ex. 3.

[Select Portfolio] was the mortgage servicer for Plaintiff's Mortgage beginning in 2013.  See Counsel Aff., Ex. 4. at 110:20-22.  At the time [Select Portfolio] took over the servicing of Plaintiff's loan, he was having trouble making his monthly payments.  On or about June 23, 2013, Plaintiff submitted a Making Home Affordable Program Request for Mortgage Assistance ("RMA").  See Affidavit of Jennifer L. Hoisington (hereinafter "SPS Aff."), Ex. 5.[5]  Plaintiff indicated in the section titled "Hardship Affidavit" that he was having difficulty making his monthly payment because of financial difficulties caused by a reduction in household income.  Id.  Plaintiff further testified that he was late on mortgage payments under his prior HAMP plan with Bank of America.  See Counsel Aff., Ex. 4. at 106-12-107:20.

In response to Plaintiff's request for assistance, [Select Portfolio] provided him with a trial modification plan on August 2, 2013.  See SPS Aff., Ex. 6.  The proposed plan required that Plaintiff make three monthly payments in the amount of $2,238.80, beginning on September 1, 2013.  Effective April 1, 2014, Plaintiff and SPS entered into a Loan Modification Agreement (the "2014 Modification").  See SPS Aff., Ex. 7.  Plaintiff signed the 2014 Modification and agreed to its terms.  See Counsel Aff., Ex. 4[] at 22:1-15.  He was not forced to sign the agreement.  Id. at 27:17-20.  The 2014 Modification Agreement stated that the new principal balance of the note was $628,445.96.  Id. at[] 24:14-16; SPS Aff., Ex. 7.  It further stated that $320,965.00 of the New Principal Balance was deferred and treated as a non-interest bearing principal forbearance.  Id.  The New Principal Balance less the Deferred Principal Balance, or the "Interest Bearing Principal Balance" was $307,480.96."  Id.  The first payment in the amount of $2,238.80 was due May 1,

---

[5] Doc. no. 19-3.

2014.  Id.  The 2014 Modification superseded any previous modification.  Id. Plaintiff has not executed any new modification agreements since the 2014 Modification Agreement, and thus the 2014 Modification is operative.  See Counsel Aff., Ex. 4[] at 29: 8-10.

Two months after the first payment was due, on July 17, 2014, [Select Portfolio] sent Plaintiff a letter notifying him he failed to make his required monthly payment.  SPS Aff., Ex. 8.  Plaintiff stated he saw this document for the first time at his deposition.  See Counsel Aff., Ex. 4[] at 31:8-32:11. However, he further admitted that he did not always open and read the correspondence he received from SPS. Id.  Specifically, when asked whether it was true that he did not review mail from his loan servicing company on some occasions, Plaintiff replied "Yeah, in many occasions."  Id.  On July 21, 2014, [Select Portfolio] sent Plaintiff a letter titled "Notice of Default Right to Cure." SPS Aff. Ex. 9.  The July 21, 2014 letter indicated that $4,613.36 was outstanding, which equated to the fact that Plaintiff owed two past due mortgage payments.  Id.; see also Counsel Aff. Ex. 4 at 32:15-33:4.  Plaintiff could not recall if he had seen the July 2014 Notice of Default, but again stated that he "did not open or look at" some of the mail he received from [Select Portfolio]. Counsel Aff. Ex. 4 at 33:5-24.

[Select Portfolio] sent numerous other notices of default to Plaintiff over the next few years.  See e.g.[,] SPS Aff., Ex. 10; Counsel Aff. Ex. 4 at 40:4-18 (August 19, 2014 default notice); SPS Aff., Ex. 11; Counsel Aff. Ex. 4 at 40:21-24 (October 1, 2014 default notice); SPS Aff., Ex. 12; Counsel Aff. Ex. 4 at 47:9-21 (February 10, 2016 default notice); SPS Aff., Ex. 13; Counsel Aff. Ex. 4 at 48:1-23 (February 18, 2016 default notice) and; SPS Aff., Ex. 14; Counsel Aff. Ex. 4 at 49:4-23 (August 22, 2016 default notice).  Plaintiff admitted to receiving default letters.  See Counsel Aff. Ex. 4 at 50:16-21. Plaintiff testified that he had not seen any of the default letters presented to him at his deposition prior to that day.  Id. at 40:4-49:23. [Plaintiff, however,] repeatedly admitted that he did not open all of the correspondence he received from SPS; and . . . Plaintiff admitted he had no reason to believe that

5

SPS failed to send them. Id. at 41:16 ("sometimes I don't open them"). Id. at 134:1-9 (Do you have any reason to believe that they didn't send [the letters]? No). Thus, Plaintiff's statement that he "did not miss a HAMP or TMT modification and had never, to my knowledge, received a default letter or negative correspondence from [Select Portfolio] until the December 2018 default notice" is merely a half-truth based on his own willful ignorance. Id. at 128:16-134:6.

. . .

Plaintiff further testified that he missed mortgage payments. He stated, "[f]rom time to time I will be late when I'm unemployed. But I typically make my mortgage payment." Id. at 36:1-3. "When I [am] either late or miss a payment, I will send two payment[s] and then they will tell me to disregard the notice." Id. at 41:16-22. "And typically when I receive those [Letters from SPS], from time to time, I don't read them." Id. at 48:15-20. Plaintiff admitted that the reason he failed to make timely payments was due to travel and his unemployment status. Id. at 46:7-47:5. At no point has Plaintiff affirmatively shown that he cured the defaults, but can only make assumptions and guesses as to his past actions. For example, when asked if he made a payment to cure the default as indicated on the October 1, 2014 statement he replied, "I would say most likely yes." Id. at 42:15-23.

. . .

Plaintiff's financial difficulties continued in 2017. Plaintiff testified that in 2017 he submitted a number of requests for mortgage assistance because he was having trouble finding employment during this time and he had a hard time making the mortgage payments. Id. at 86:12-88:3. By letter dated March 6, 2017, [Select Portfolio] informed Plaintiff that he qualified for a repayment plan, which required 12 payments of approximately $3,372.00 beginning on March 28, 2017. See SPS Aff., Ex. 15. The letter stated that Plaintiff had until March 28, 2017 to accept the offer. Id. On April 4, 2017, [Select Portfolio] sent Plaintiff a letter stating that it offered a repayment

6

plan, but Plaintiff failed to accept the offer by the deadline. See SPS Aff., Ex. 16.  Two days later, on April 6, 2017, [Select Portfolio] offered Plaintiff a repayment plan that was valid until April 30, 2017. See SPS Aff., Ex. 17.  This plan required 12 payments of approximately $3,579.00 beginning on April 30, 2017.  Id.

By August of 2017, Plaintiff was in arrears on his mortgage payment in the amount of $15,696.  See SPS Aff., Ex. 18; Counsel Aff., Ex. 4 at 51:13-21. Shortly thereafter, on November 24, 2017, Plaintiff submitted another request for mortgage assistance to SPS.  See SPS Aff., Ex. 19; Counsel Aff., Ex. 4 at 53:8-55:1.  Plaintiff's request contained a hardship affidavit in which he stated he was unemployed but regained employment.  See SPS Aff., Ex. 19; Counsel Aff., Ex. 4 at 55:20-56:23.  The hardship affidavit further states that Plaintiff made a payment in October towards his mortgage arrears in the amount of $3,762.00—an amount that was more than his monthly payment of approximately $2,200, but less than two payments. SPS Aff., Ex. 19; Counsel Aff., Ex. 4 at 57:6-24.  There is only one reason for an overpayment; Plaintiff missed yet another full monthly mortgage payment.  This alleged payment was returned to him because Plaintiff sent it to the incorrect address. SPS Aff., Ex. 19; Counsel Aff., Ex. 4 at 59:1-4. Plaintiff has no record that he sent the payment to the correct address.  SPS Aff., Ex. 19; Counsel Aff., Ex. 4 at 59: 1-21.  Rather, he could not afford the mortgage as is and was seeking a new repayment plan. Id. at 59:21-61:8.  Plaintiff certified to [Select Portfolio] that his "cash reserves, including all liquid assets, are insufficient to maintain [his] current mortgage payment and cover basic living expenses at the same time."  SPS Aff., Ex. 19; Counsel Aff., Ex. 4 at 61:9-19. Plaintiff continually struggled to make timely and complete mortgage payments in 2018. On May 30, 2018, Plaintiff submitted another request for mortgage assistance to SPS.  SPS Aff., Ex. 20; Counsel Aff., Ex. 4 at 61:24-63:24.  Plaintiff's request stated that Plaintiff was laid off four months ago, which would have been January 2018.  Aff., Ex. 20; Counsel Aff., Ex. 4 at 63:1-6.

Plaintiff further stated that he regained employment two weeks ago, was looking forward to making his monthly mortgage payment and it would "be helpful if you can spread the [ar]rear payment in two years." SPS Aff., Ex. 20; Counsel Aff., Ex. 4 at 63: 19-23. In other words, Plaintiff was asking [Select Portfolio] to spread the arrears owed over a two-year period. Id. at 66:6-9. Thus, again acknowledging he was behind on his mortgage for an amount that would take two years to make up for.

By letter dated August 24, 2018, [Select Portfolio] sent Plaintiff a Notice of Default/Right to Cure letter indicating $29,296.47 was required in order to cure the default. SPS Aff., Ex. 21. Plaintiff does not remember receiving this letter; but acknowledged he may not have opened it. Counsel Aff., Ex. 4 at 68:22-72:16. He further testified that while he did not remember this particular default letter he admitted he did see other notices of default. Id. at 68:22-8; 104:24-105:2.

. . .

The mortgage statement dated December 13, 2018 indicates that Plaintiff owed $41,344.72 and that his loan was in default for over a year. SPS Aff., Ex. 22; Counsel Aff., Ex. 4 at 153:10-154:17. Consistent with his testimony as to almost every mortgage statement shown throughout his deposition, Plaintiff testified that "this is the first time I have seen it." Id. at 154:4-17. He further stated that he was not aware he was behind on his mortgage by over $40,000. Id. Yet, minutes later Plaintiff retracted this statement when confronted with an affidavit he signed on February 14, 2020 that stated "In December of 2018 . . . [Select Portfolio] notified me that I was in default on my mortgage . . . [the] default notice showed me behind $47,570. See ECF No. 6-1, Affidavit of Alex Jeanty ("Jeanty Aff."). Id. 154:18-157:7. While Plaintiff disagrees that he owed that amount, he cannot point to a single payment that was misapplied or show proof of any payments whatsoever. Counsel Aff., Ex. 4 at 159:14-23.

On February 19, 2019, Plaintiff completed a Making Home Affordable Program Request for Mortgage

8

> Assistance, which attached a signed a hardship letter. Id. at 161:2-172:24; SPS Aff., Ex. 23. The hardship affidavit stated that Plaintiff was having difficulty making his monthly mortgage payment because he lost his job for a period of time. Id. Enclosed with the February 19, 2019 request for assistance was a separate hardship letter, which further explained his request for assistance. Id. Plaintiff did not make any notation with respect to an improper loan modification or misapplication of payments in the letter. Id. Rather, he acknowledged he was in arrears for more than $20,000. Id. Specifically, he stated "I have been able to save approximately $20,000 to go toward the arrearage; however, I do not yet have the full reinstatement amount." Id.

Doc. 19-1 at 3-8 (emphases in original).[6]

B.   Claims

The court previously dismissed several of Jeanty's claims as time barred and for failure to state a claim upon which relief can be granted. Doc. 10. The claims that remain in Jeanty's complaint, Counts III and IV, are based on breach of contract theories. In Count III, Jeanty alleges that Deutsche Bank breached the 2014 Trial Modification Plan by failing to apply modified mortgage payments, enforcing default remedies despite his compliance with the agreements, and depriving him of his right to

---

[6] In adopting the defendants' statement of material facts, the court has omitted characterizations of the facts and legal conclusions drawn from the asserted facts. The court has also made some alterations, noted by brackets, for clarity or brevity.

reinstatement under paragraph 19 of the mortgage agreement by supplying him with incorrect reinstatement figures.[7] Similarly, in Count IV, Jeanty alleges that Select Portfolio breached the modification agreement by failing to extend the modification for twenty years, by keeping the mortgage in default status, and by pursuing remedies for default.[8]

## Discussion

"A breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." Audette v. Cummings, 165 N.H. 763, 767 (2013). The defendants contend that Jeanty's breach of contract claims fail on their merits. In support, the defendants argue that Jeanty has failed to marshal any facts in support of his claims and that the undisputed facts show that Jeanty was in default on his mortgage, which precludes his

---

[7] The court dismissed Jeanty's allegations in Count III about "Deutsche Bank's failure to notify Jeanty about the change in mortgage servicer" as time barred. Doc. 10 at 20.

[8] The court dismissed various allegations that Jeanty made against Bank of America in Count IV.

breach of contract claims.  Jeanty did not respond to the defendants' contentions that his claims fail on their merits.[9]

### A. Default Status, Exercise of Default Remedies, and Extension of Modification Agreement

The undisputed facts show that Jeanty did not comply with the terms of the mortgage agreement or the modification agreement, so the defendants did not breach the mortgage agreement or the modification agreement by exercising default remedies.  The mortgage agreement permits the use of default remedies when a borrower defaults, and the modification agreement did not change those terms.  See doc. 19-5 at 3, 19 (mortgage agreement listing lender's remedies for borrower's default); doc. 19-3 at 15 ¶ 3(c), (d) (modification agreement stating that "[a]ll terms of the Security Instrument and Note, except as expressly modified by this Agreement . . . remain in full force and effect.").  Jeanty routinely missed or made late payments on the mortgage.  By August 2017 Jeanty was behind on

---

[9] The defendants also contend that Jeanty's remaining claims are barred by New Hampshire's three-year statute of limitations under RSA 508:4(I).  Jeanty responded to that argument, asserting that he could not have discovered the claims that remain in this case more than three years prior to his filing of them.  Because the court finds that summary judgment is warranted in the defendants' favor on the merits of Jeanty's claims, the court does not address whether Jeanty filed his claims within the applicable statute of limitations.

his payments by $15,696.  By August 2018 that amount was $29,296.47.  By December 2018, the amount was $41,344.72.

Jeanty did not dispute these facts with evidence that creates a genuine dispute.  Jeanty's counter-affidavit is not sufficient to create a genuine dispute of material fact about whether he was in default because he stated that he only "generally" made his payments and that he "perceived" his loan balance to be incorrect.  Doc. 20-1 ¶¶ 24, 31.  In his deposition, Jeanty acknowledged that he missed or made late payments.  Doc. 19-5 at 43-44, 55-58.  Jeanty also acknowledged that he was in arrears in a "hardship letter" submitted in 2019 alongside a new application for a modification to the repayment terms.  Doc. 19-3 at 103.  Jeanty did not offer any argument in response to the motion for summary judgment to show that the defendants incorrectly determined that he was in default or to show how they breached the contract by pursuing default remedies after he defaulted.  For those reasons, Jeanty's claims against Deutsche Bank (Count III) and Select Portfolio (Count IV) alleging that they breached the mortgage agreements or the modification agreement by keeping his loan in default status, by pursuing default remedies, or by failing to extend or comply with the modification agreement fail as a matter of law.

B.   Misapplication of Payments

As to Jeanty's allegation that Deutsche Bank (Count III) and Select Portfolio (Count IV) misapplied some of his mortgage payments, the defendants have pointed out the absence of evidence supporting Jeanty's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 325, (1986) ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). As stated above, Jeanty failed to offer any pertinent argument in response to the defendants' motion for summary judgment about whether Jeanty had, in fact, defaulted on the mortgage agreement. Similarly, Jeanty did not identify any payments that he made but were misapplied in his objection or his counter-affidavit. Jeanty did not identify any evidence of a misapplied payment in the materials presented to the court by the defendants, and the court found no evidence in the materials that would create a genuine dispute as to whether there was any misapplied payment. Accordingly, Deutsche Bank and Select Portfolio are entitled to summary judgment as to Jeanty's claims that they breached the contract by failing to apply mortgage payments to Jeanty's balance.

### C. Erroneous Balance

Jeanty failed to provide any facts demonstrating that, as alleged in Count III, Deutsche Bank supplied him with an erroneous balance when sending him default notices or other correspondence. As noted above, Jeanty has not shown that any of his payments were misapplied, and the undisputed facts reveal that he was behind on his payments. Jeanty did not make any argument or provide evidence showing why or how the loan balance provided by the defendants was incorrect.

### Conclusion

For the foregoing reasons, the defendants have demonstrated that summary judgment in their favor is appropriate on all of Jeanty's remaining claims. The motion for summary judgment (doc. no. 19) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

March 29, 2021

cc: Counsel of Record.